

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-4689
Re: Is an Architect-Engineer-Manager
cost-plus-a-fixed-fee contractor,
under the contract submitted, an
agency or instrumentality of the
Federal Government, so as to be
exempt from the use tax levied by
Article 7065b, Vernon's Texas Civil
Statutes, as to motor fuel used by
it to propel motor vehicles upon
the highways in the construction
of the Pantex Ordnance Plant.

Your letter of June 26, 1942, submits for our opinion
the following question which we copy therefrom:

"Under date of May 28, 1942, you released Opinion
No. O-4389, holding that the tax imposed upon the use
of motor fuel in Texas by Chapter 184, Article XVII,
Acts Regular Session of the 47th Legislature, would ap-
ply to motor fuel purchased by the Federal Government
and thereafter turned over to and used by a cost-plus-
a-fixed-fee contractor engaged in the construction of a
Government defense project.

"The opinion held because of the Constitutional
immunities the distributor who made the first sale to
the Government and the Government who delivered the
motor fuel to the cost-plus-a-fixed-fee contractor would
not be subject to the tax, but that the cost-plus con-
tractor who actually used the motor fuel upon the high-
ways in Texas would be subject to said tax.

"This opinion was submitted to Freese and Nichols
and the McKenzie Construction Company, who are operat-
ing as Architect-Engineer-Manager cost-plus-a-fixed-fee

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

contractors in the construction of the Pantex Ord-
nance Plant at Amarillo, Texas.  Mr. Cleo G. Clayton,
Jr., Attorney for these companies, has requested that
we obtain an opinion from the Attorney General as to
whether or not Architect-Engineer-Manager cost-plus-
a fixed-fee contractors are subject to the tax on motor
fuel purchased and used by them.

"Mr. Clayton mailed to you a statement of facts
in which he pointed out his reasons for believing that
they were not subject to the tax, together with a copy
of the contract with the Federal Government, under which
they were operating.

"Will you please read the statement of facts and
contract and advise me whether or not these companies
are subject to the motor fuel tax imposed by the Texas
Law?  Or, if your Opinion No. O-4589 clearly covers
their operations, please so advise me."

In connection with your inquiry and supplementary thereto,
we have before us a letter and supporting brief submitted by Honor-
able Cleo G. Clayton, Jr., Attorney for the contractor in question,
effectively stating the position of his client with reference to
the collection of this motor fuel tax, and strongly pointing a dis-
tinction between the ordinary cost-plus-a-fixed-fee "construction"
contract such as was involved in the opinions of this department
and the Supreme Court of the United States adverted to, and the
instant "Architect-Engineer-Manager" contract.  We have also been
kindly furnished with a copy of this particular contract, which is
referred to and made a part of this opinion for all purposes, be-
cause it is upon the terms of said contract that this opinion turns.

The controlling issue before us is whether or not the
terms and provisions of this so-called A-E-M cost-plus-a-fixed-fee
contract constitutes the contractors therein named independent con-
tractors so as to be subject to the excise, privilege or use tax
levied by the cited motor fuel tax law of Texas, or mere agencies
or instrumentalities of the Federal Government, as contended by the
aforementioned brief, and consequently immune from all direct state
taxation.  Although it is clearly made to appear from the factual
statement before us that the Federal Government was the direct pur-
chaser of the motor fuel involved and the A-E-M contractor was not

such purchaser, with a right of reimbursement from the Government, we do not consider that the above stated issue hinges upon this fact; because if such A-E-M contractor is an independent contractor and not an agency, instrumentality or arm of the Government, a motor fuel tax will accrue and be collected, regardless of the method used in purchasing such motor fuel. That is to say, if the motor fuel had been purchased by said contractor (being an independent contractor), direct from the vendor, with a right of reimbursement from the Federal Government, as in the facts before us in our Opinion No. O-3049, involving a cement tax, and in the facts before the Supreme Court of the United States in the recent cases of Alabama vs. Boozer, 86 L. Ed. 1, and Curry vs. United States, 86 L. Ed. 6, the motor fuel tax would accrue and be collected by the duly constituted and defined "distributor" of motor fuel, making a first sale of this product to the contractor, with a refund allowed for all such motor fuel as was not used upon the highways; on the other hand, if the Government exercises its usual option of making purchases direct from the vendor and delivering such motor fuel directly to the contractor, as in the factual situation before us in the writing of our Opinion No. O-4389, then a tax upon the use of motor fuel by such contractor, being an independent contractor, would accrue against and be paid directly to the State by such contractor.

Upon a careful reading of the submitted contract, we are compelled to the conclusion that the A-E-M contractor in question is thereby constituted an independent contractor rather than an agency, instrumentality or arm of the Federal Government, and is, therefore, under the holding of our Opinion No. O-4389, liable for the tax on all motor fuel purchased and delivered to it by the Government and used by it to propel motor vehicles upon the highways of this State, the collection thereof to be in the manner indicated in said opinion.

As stated by the authorities generally (See 39 C. J. 1318-1319) and contrary to the contentions urged by contractor's counsel, there is nothing peculiarly inherent in a contract calling for engineering, architectual or managerial services, as distinguished from "construction" contracts, which precludes the former type of contract from creating the relationship of independent contractor if the parties so desire to contract. A contract to furnish the architectual, engineering or managerial services for the construction of a given project for the Government is just as

necessary and occupies no different classification or status, as relates to the law governing the relationship of master and servant or independent contractor, as the usual contract to actually construct or build the plant or project. Under the instant contract the contractor undertakes and obligates himself or itself to furnish the plans and specifications and perform all other services expressly contemplated therein, in connection with a specifically described project, and to furnish the labor, materials, tools and supplies therefor, with right of reimbursement by the Government for the cost of the work. Reference is made to the entire contract before us for the detailed provisions and terms which prompt this conclusion, without unnecessarily burdening this opinion by copying the same herein. Suffice to say, the same general features and provisions are present in the instant contract which were in the construction contract involved in our Opinion No. O-3049, in substantially the same form and result. We refer you to said opinion for a more detailed discussion of the contractual provisions and authorities which we deem will call for the same result here. We enclose a copy of said opinion for your convenience.

Trusting the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Pat M. Neff, Jr.
Assistant

PMN:ej

APPROVED JUL 1942

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY CHAIRMAN